IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 NOV -9 PM 3: 24

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

TIG INSURANCE COMPANY,

    Plaintiff,

v.                                No. 04-2666 B

MERRYLAND CHILDCARE AND
DEVELOPMENT CENTER, INC., et al.,

    Defendants.

## ORDER DENYING MOTION TO DISMISS OF DEFENDANT CAPITOL INDEMNITY CORPORATION

This diversity action for declaratory judgment was brought by the Plaintiff, TIG Insurance Company ("TIG"), for a determination of its rights and obligations under an insurance policy issued to the Defendant, Merryland Childcare and Development Center, Inc. a/k/a Merryland Kindergarten, Inc. a/k/a Merryland Kindergarten and Day Care Center, Inc. ("Merryland"), with respect to nine state court lawsuits and six claims filed against TIG, alleging the sexual abuse of minor children in the care of Merryland. Also named as a Defendant in this action is Capitol Indemnity Corporation ("Capitol" or the "Defendant Insurer") against which the Plaintiff made the following allegation::

> Defendant [Capitol] is an insurance company doing business in providing insurance coverage in the state of Tennessee. Upon information and belief, [Capitol] provided sexual abuse and molestation insurance coverage for Merryland and its employees prior to the inception of the TIG policy period. [Capitol] is joined as a party because, pursuant to Tennessee Code Annotated, §29-14-107(a), it will be bound by any judgment entered in this declaratory judgment action.

(Compl. for Declaratory J. at ¶ 23.) Neither insurer is a party to the state actions. Before the Court is Capitol's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 11-9-05

65

Procedure.

The Rule permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On such a motion, the Court is required to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which [it] bases [its] claim," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

In the present case, the Plaintiff brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201 (the "Act"), which provides that

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The statute "was enacted, in part, so that parties could 'narrow the issue, speed the decision, and settle the controversy before an accumulation of differences and hostility . . . engendered a wide and general conflict, involving numerous collateral issues.'" American Home Assurance Co. v. Swanson, No. 93 C 383, 1993 WL 155501, at *1 (N.D. Ill. May 10, 1993) (citing S.Rep. No. 1005, 73rd Cong., 2d Sess. 3 (1934)).

The "actual controversy" requirement of the Act mirrors the constitutional limitation of

2

Article III of the United States Constitution, which confines the jurisdiction of the federal courts to adjudication of "cases" and "controversies." U.S. Const. art. III, § 2; see also National Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997) ("The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act"). The "case and controversy" requirement gives rise to the concept of standing. See Goleta Nat'l Bank v. O'Donnell, 239 F.Supp.2d 745, 750 (S.D. Ohio 2002). "Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." National Rifle Ass'n, 132 F.3d at 279 (citing Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). "There is no bright line rule for determining whether the dispute presents a substantial controversy or merely an abstract question. . . . Instead, courts must decide whether a justiciable controversy exists on a case by case basis." New York Times Co. v. Gonzales, 382 F.Supp.2d 457, 474 (S.D.N.Y. 2005), as amended (Mar. 2, 2005) (citations and internal quotation marks omitted). As the Supreme Court explained in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas., 312 U.S. at 273, 61 S.Ct. at 512. "Where it appears that the contingent event upon which the controversy rests is unlikely to occur, the controversy lacks sufficient immediacy and reality to warrant declaratory

3

relief. Similarly, the disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." New York Times Co., 382 F.Supp.2d at 474 (internal citations and quotation marks omitted). However, "particularly in cases involving insurance coverage, declaratory judgment actions to determine the scope of liability are permissible despite the fact that the exact sums for which the insurer may be liable have not yet been determined." Rorer Group, Inc. v. Home Indem. Co., No. CIV. A. No. 88-9752, 1990 WL 106724, at *4 (E.D. Pa. July 25, 1990). The burden rests on the plaintiff to show by a preponderance of the evidence that jurisdiction under the Act exists. Wright Med. Tech., Inc. v. Osteonics Corp., 914 F.Supp. 1524, 1528-29 (W.D. Tenn. 1995).

The TIG insurance policy at issue in this case had a policy period of January 28, 2003 to January 28, 2004. It is TIG's understanding that Capitol insured Merryland prior to the inception of the TIG policy. According to the Plaintiff, it provided coverage only for "sexual abuse occurrences" during the policy period. The policy further provided "that all acts of 'sexual abuse occurrence' by an actual or alleged perpetrator, including 'negligent employment' of such perpetrator, shall be deemed and construed as one occurrence which takes place when the first act of sexual abuse or molestation occurs." (Pl. TIG Ins. Co.'s Resp. to Def. Capitol Indem. Corp.'s Mot. to Dismiss at 3.) The Court is advised that one of the children allegedly molested attended Merryland from October 31, 2001 through December 2, 2002 and, therefore, the "occurrence" as that term is defined under the TIG policy had to have first taken place on December 2, 2002 at the latest, prior to the inception of its policy coverage period. The Plaintiff argues that, should judgment be entered in TIG's favor in this action, inclusion of the Defendant Insurer herein would preclude Capitol from asserting in a

4

later action that the TIG policy provided coverage for the underlying state claims. That is, the Plaintiff is concerned that, if Merryland seeks coverage for the alleged abuse in the underlying suits under the Capitol policy, the Defendant Insurer could assert that it was not given the opportunity to be heard on the issue of whether the TIG policy provided coverage. In so doing, Capitol could require a second round of litigation over coverage.

The Defendant Insurer argues that no actual controversy or adverse legal interest is present between TIG and Capitol, as neither insurer is seeking coverage or reimbursement from the other for any claim made against Merryland and there is no legal relationship between them upon which to base liability. In support of its contentions, the Defendant Insurer points the Court to two cases it contends are supportive of its position: Provident Life & Accident Insurance Co. v. TransAmerica-Occidental Life Insurance Co., 850 F.2d 1489 (11th Cir. 1988) and American Home Assurance Co. v. Liberty Mutual Insurance Co., 475 F.Supp. 1169 (E.D. Pa. 1979).

In Provident, the original insurer for medical coverage sued a subsequent insurer in a declaratory judgment action to determine which of the two carriers was liable for the medical expenses of the insured. Provident Life & Accident Ins. Co., 850 F.2d at 1488-89. The insurance companies were the only parties to the lawsuit, which the court considered particularly significant in finding the lack of a case or controversy. Id. The court held that the plaintiff's failure to name the insured in the action did not create a substantial controversy between parties having adverse legal interests. Id. at 1491. Indeed, the Provident court distinguished the case before it from one cited by the plaintiff therein, whose facts were somewhat similar to those before this Court. In the case cited, the court "found jurisdiction to resolve a dispute between two insurers in a declaratory judgment action even though there was no privity between them and the obligation of each was to their

common insured and not to the other." Id. at 1492 (citing Industrial Underwriters Ins. Co. v. P & A Constr. Co., 382 F.2d 313 (1967)). The Provident court distinguished the cited case, stating that, in "Industrial Underwriters, the insured was named as a party to the action. Thus, even though no legal relationship existed between the insurers, there was a controversy between the plaintiff insurer and the defendant insured. In the instant case, the [insured] was never named as a party to the action." Id. As the insured is, of course, a party to the action before this Court, any assistance Provident might be to Capitol is dubious at best.

In American Home, the court articulated that the question presented was "whether two insurance companies have the requisite standing to bring an action seeking declaratory relief in federal court to determine the legal effect of an indemnity agreement which was entered into between two separate parties who are not parties to the present action but are insured by the insurance companies that are parties in this action." American Home Assur. Co., 475 F.Supp. at 1172. There is no indemnity agreement at issue in this case between Capitol and TIG and the Defendant Insurer has offered no argument as to how the case is relevant to the question at bar. Thus, it is also of little assistance to this Defendant.

Regretfully, the Plaintiff's legal argument fails to shed much light on the subject either. In response to the motion, TIG defends its inclusion of Capitol as a Defendant in this case based on a provision of the Tennessee declaratory judgment statute which requires that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." Tenn. Code Ann. 29-14-107(a). In the Court's view, however, the state declaratory judgment law has no application here. As the Third Circuit has stated,

[i]It is settled law that, as a procedural remedy, the federal rules respecting

6

declaratory judgment actions, apply in diversity cases. While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law. Thus a federal court decides for itself whether a party has standing to raise a particular issue, or that a particular matter is justiciable or that it is not. If it were otherwise, then when state law exhibited more leniency in its definition of "case or controversy," the federal courts would be improperly exercising federal jurisdiction over a diversity action.

Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986), reh'g and reh'g en banc denied (Jan. 14, 1987) (internal citations and quotation marks omitted); see also Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 229 (3d Cir. 2005) (state declaratory judgment act governing whether entity was an indispensable party in an insurance coverage action procedural and, therefore, federal district court not required to apply state law); Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F.Supp.2d 1069, 1074-75 (D. Minn. 2001) (declaratory judgment acts are procedural; therefore, in diversity case, federal declaratory judgment act controls); Standard Fire Ins. Co. v. Sassin, 894 F.Supp. 1023, 1025-26 (N.D. Tex. 1995) (in federal action based on diversity, state's declaratory judgment act had no application). In addition, the case cited by the Plaintiff in support of its contention that the Court is to look to the law of the forum state in a diversity action was speaking specifically to choice of law questions, which are not at issue here. See Spence v. Miles Lab., Inc., 37 F.3d 1185, 1188 (6th Cir. 1994). Thus, the Court must analyze the question before it based on federal law.

Courts in this Circuit has enumerated five factors to be considered on a motion to dismiss a declaratory judgment action:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is

an alternative remedy that is better or more effective.

Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 453 (6th Cir. 2003) (quoting Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 967 (6th Cir. 2000), reh'g and suggestion for reh'g en banc denied (July 7, 2000)).

In this case, the first two considerations are met, as a declaratory judgment would settle the controversy as to the extent of TIG's responsibility for the impending liability of its insured. "[A] prompt declaration of policy coverage would surely serve a useful purpose in clarifying the legal relations at issue." Scottsdale Ins. Co., 211 F.3d at 968 (internal quotation marks omitted). There is nothing before the Court to suggest the existence of "procedural fencing" or a "race for res judicata." Neither insurer is a party to the state action and, therefore, would not be bound by its decision. With respect to the fourth factor, the court in Scottsdale recognized three questions relevant to its determination:

1. whether the underlying factual issues are important to an informed resolution of the case;

2. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

3. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Id.; see also Northland Ins. Co., 327 F.3d at 454. TIG is not a party to the underlying action and the scope of its coverage is not, based on the information presented here, before the state court. Accordingly, a decision on coverage issues by this Court would not offend principles of comity. See Northland Ins. Co., 327 F.3d at 454 (where plaintiff insurer was not party to state action and scope of coverage under its policy not an issue therein, a federal court decision as to coverage would not offend principles of comity). As the court in Northland observed under similar circumstances, the

district court is capable of

> determining the nature of the coverage provided by the contract of insurance. . . . The resolution of the declaratory judgment action is not governed by federal common or statutory law, but rather by state contract law. However, no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law. The district court's exercise of jurisdiction would not create friction between the state and federal courts.

Id. Finally, with respect to the fifth factor, the alternatives to bringing this declaratory judgment action would have been for TIG to intervene in the state lawsuits or to wait to be sued by its insured, which this Court is not convinced would have provided a "better or more effective" remedy. See id. ("intervening in the state court action would not necessarily have provided a better or more effective alternative remedy"); Chicago Ins. Co. v. DHS/Diversified Health Servs., Inc., No. 03-2337 Ma/A, 2005 WL 1009553, at *3 (W.D. Tenn. Apr. 21, 2005) (plaintiff's alternative remedies were to wait to be sued or intervene in the state action, neither of which would necessarily provided a better remedy, citing Northland). Based on its conclusion that the five factors articulated by the Sixth Circuit weigh in favor of the exercise of its jurisdiction in this matter, Capitol's motion to dismiss is DENIED.

IT IS SO ORDERED this 9th day of November, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 65 in case 2:04-CV-02666 was distributed by fax, mail, or direct printing on November 9, 2005 to the parties listed.

---

Walter L. Bailey
WALTER BAILEY & ASSOCIATES
100 North Main St.
Ste. 3002
Memphis, TN 38103

Gregory W. O'Neal
BRATTON & O'NEAL
675 Oakleaf Office Ln.
Ste. 200
Memphis, TN 38117

Craig V. Morton
MORTON & GERMANY
200 Jefferson Ave.
Ste. 725
Memphis, TN 38103

Rex L. Brasher
BROWN BRASHER & SMITH
5100 Poplar Avenue
Ste. 2515
Memphis, TN 38137

Jerry Stokes
LAW OFFICE OF JERRY STOKES
100 N. Main St.
Ste. 2601
Memphis, TN 38103

Diane Karp Ehrhart
BOLLINGER RUBERRY & GARVEY
500 West Madison Street
Ste. 2300
Chicago, IL 60661--251

Valerie T. Corder
LAW OFFICE OF VALERIE T. CORDER
200 Jefferson
Ste. 725
Memphis, TN 38103

James F. Horner
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Jeffrey A. Goldwater
BOLLINGER RUBERRY & GARVEY
500 West Madison Street
Ste. 2300
Chicago, IL 60661

David A. McLaughlin
COCHRAN CHERRY GIVENS SMITH & BOLTON
One Commerce Square
Ste. 2600
Memphis, TN 38103

Beth Brooks
BROOKS LAW FIRM
119 Racine
Memphis, TN 38111--089

Honorable J. Breen
US DISTRICT COURT