IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TIG INSURANCE COMPANY,

    Plaintiff,

v.                                                         No. 04-2666 B

MERRYLAND CHILDCARE AND
DEVELOPMENT CENTER, INC., et al.,

    Defendants.
_____

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION AND PROCEDURAL BACKGROUND

This diversity action for declaratory judgment was brought by the Plaintiff, TIG Insurance Company ("TIG"), for a determination of its rights and obligations under an insurance policy issued to the Defendant, Merryland Childcare and Development Center, Inc. a/k/a Merryland Kindergarten, Inc. a/k/a Merryland Kindergarten and Day Care Center, Inc. ("Merryland"), with respect to claims filed against the insured alleging the sexual abuse of minor children in its care.  Also named as defendants in this action are various employees of Merryland, the parents and/or guardians of the minor children and Capitol Indemnity Corporation which, it has been alleged, was the provider of sexual abuse and molestation insurance to Merryland prior to inception of the TIG policy period. Before the Court is the motion of the Plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Separate responses have been filed on behalf of Defendants Merryland and Tony Taylor, as well as Defendants Stephanie Sherrod, Romonda Eulls, Valetta Eulls, Nancy Taylor, Jill Brown, Stacie Spencer, Regina Williams, Judy Hewitt, Clevell Butler and Alberta Butler on behalf of their children (the "Defendant Parents").  In their response to the instant

motion, Defendants Merryland and Tony Taylor advise the Court that "they are no longer able to defend themselves against the actions of TIG." (Resp. to Pl.'s Mot. for Summ. J. at 1) Accordingly, the positions of the parties discussed herein will be only those propounded by TIG and the Defendant Parents.

STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988).

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the

evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following facts are undisputed for purposes of this motion. At the time the incidents occurred from which this action arose, Merryland was a childcare facility in Memphis, Tennessee. An individual named Ivan Ward worked at Merryland continuously from September 2000 to April 15, 2003. From September 2000 to April 2001, Ward was actually an employee of Day Care Personnel Staffing, a staffing service, and afterward became an employee of Merryland. On April 15, 2003, Ward was suspended from his position after he was accused of sexually molesting a student at the daycare center. He did not return to the facility after that date. Following Ward's suspension, parents of other children at the center came forward claiming that their children had also been molested. Ward began molesting students on the premises of the center in February 2001, including Rozelle Curtis, who attended the center from October 31, 2001 to June 27, 2002 and again on December 11, 2002.

Nine civil suits were filed by the Defendant Parents of Merryland students against the daycare center and its shareholders and employees in the Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis arising from the alleged sexual abuse perpetrated by Ward. In this action, TIG seeks a declaration that its policy does not provide coverage for these suits.

The TIG policy issued to Merryland for the policy period commencing on January 28, 2003 and ending January 28, 2004 contained, among other things, Sexual Abuse or Molestation Liability Coverage (Compl. for Decl. J. Ex. A (TIG Policy No. T7X-38882909-00/000, Sexual Abuse or Molestation Liability Coverage Form (the "Policy"))) The insuring agreement for the coverage

contains the following language:

> A. Insuring Agreement
>
> 1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" caused by a "sexual abuse occurrence." We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "sexual abuse occurrence" and settle any claim or "suit" that may result.
>
>    But:
>
>    a. The amount we will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE;
>
>    b. The amount we will pay as "defense expenses" is limited as described in SECTION III-LIMITS OF INSURANCE;
>
>    \*   \*   \*
>
> 2. This insurance applies to a "sexual abuse occurrence" only if it:
>
>    a. Takes place in the "coverage territory"; and
>
>    b. During the policy period. If the "sexual abuse occurrence" consists of a series of related acts of sexual abuse or molestation, the "sexual abuse occurrence" shall be deemed to have taken place on the date of the first of such series of acts. No coverage is afforded under this policy if the first act of a "sexual abuse occurrence" took place outside the policy period.

(Policy, sec. 1) A "sexual abuse occurrence" is defined under the Policy as

> 1. A single act, or multiple, continuous, sporadic, or related acts of sexual abuse or molestation caused by one perpetrator, or by two or more perpetrators acting together. "Sexual abuse occurrence" includes "negligent employment" of any person accused of or involved in such sexual abuse or molestation. A "sexual abuse occurrence" must occur while the claimant is in the care, custody or control of an insured, or a person or entity indemnified under an insured contract pursuant to which the [insured] has legal responsibility for the person or entity.

    2.    All acts of "sexual abuse occurrence" by an actual or alleged perpetrator or perpetrators, including "negligent employment" of such perpetrator or perpetrators, shall be deemed and construed as one occurrence which takes place when the first act of sexual abuse or molestation occurs, regardless of the number of persons involved, or the number of incidents or locations involved, or the period of time during which the acts of sexual abuse or molestation took place.

(Policy, sec. V(G))

## ARGUMENTS OF THE PARTIES AND ANALYSIS

It is the position of the Plaintiff that the last date Curtis attended Merryland while Ward was employed there was December 11, 2002, approximately six weeks prior to the beginning of the Policy's effective period. Thus, TIG contends, any sexual abuse perpetrated by Ward on Curtis occurred prior to the inception of the Policy. Moreover, according to his affidavit, Ward began sexually abusing Merryland students in February 2001, two years prior to the Policy's effective date. As Ward's first act of sexual abuse predated the Policy, TIG submits that, as a matter of law, no coverage existed thereunder for any of Ward's acts. The Plaintiff also argues that any claims against Merryland that it negligently employed Ward is controlled by the Policy's "sexual abuse occurrence" definition and, along with claims in connection with the sexual abuse, constitute one occurrence for purposes of the Policy provisions.

The parties do not dispute that Tennessee law applies to this matter. In Tennessee, the interpretation of a contract of insurance is a matter of law to be determined by the Court. Se. Mental Health Ctr., Inc. v. Pacific Ins. Co., 439 F. Supp. 2d 831, 835 (W.D. Tenn. 2006).

> In interpreting an insurance contract, [the court] must determine the intention of the parties and give effect to that intention. An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured. However, the contract may not be rewritten by the Court.

Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758, 768 (Tenn. 2006) (internal citations omitted). "[W]here the contract language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Further, an ambiguity does not arise merely because the parties disagree regarding the interpretation of specific provisions." Memphis-Shelby County Airport Auth. v. Ill. Valley Paving Co., No. 01-3041 B, 2006 WL 2169025, at *4 (W.D. Tenn. Jul. 31, 2006) (internal citations omitted). Courts are cautioned against creating ambiguity where none exists. Se. Mental Health Ctr., 439 F. Supp. 2d at 835.

Some of the Defendant Parents argue that the Policy language stating that if a "'sexual abuse occurrence' consists of a series of related acts of sexual abuse or molestation, the 'sexual abuse occurrence' shall be deemed to have taken place on the date of the first of such series of acts" is ambiguous. They maintain that Ward's pre-Policy period sexual abuse does not constitute "a series of related acts" with respect to *different* children who were abused by Ward during the Policy period.

The Plaintiff has referred the Court to two cases outside this jurisdiction, both addressing specifically the Policy language at issue here. In TIG Insurance Co. v. Smart School, 401 F. Supp. 2d 1334 (S.D. Fla. 2005), TIG sought a declaratory judgment on coverage in connection with sexual abuse perpetrated by a teacher who molested two children on multiple occasions. Smart Sch., 401 F. Supp. 2d at 1336-37. The essential question before the court in Smart School, as it is here, was whether the sexual abuse engaged in by an employee during his employment at the insured's facility, directed at different students, constituted a "sexual abuse occurrence" for purposes of the Policy. The court analyzed the contract language of the TIG policy thusly.

> Beginning as the Court must with the language TIG employed, the Court notes that the definition of "a sexual abuse occurrence" in the first paragraph plainly encompasses multiple acts of sexual abuse caused by "one perpetrator." Additionally, those acts need not be related as reflected by TIG's use of the terms "multiple" and "sporadic" and then following them with the phrase "or related." It

6

> seems clear from the use of the disjunctive "or" after the terms "multiple" and "sporadic" and preceding the term "related" in the first sentence of the first paragraph ("a single act, or multiple, continuous, sporadic, or related acts of sexual abuse . . ."), that the definition contemplates that either related or unrelated incidents of sexual abuse by one perpetrator are to be treated as a single occurrence. Further, while it is true that the definition does not state explicitly whether the abuse of multiple victims by a single perpetrator is a single occurrence, it does provide in the second paragraph of the definition that "[a]ll acts of 'sexual abuse occurrence'" are to be deemed as a single occurrence that takes place when the first act of sexual abuse occurs. And, presumably to reinforce the notion that the definition is intended to encompass all acts of sexual abuse by a single perpetrator, the second paragraph further provides that "all acts of sexual abuse occurrence" by a single perpetrator or perpetrators are to be deemed a single occurrence "*regardless of the number of persons involved, or the number of incidents or locations involved, or the period of time during which the acts of sexual abuse or molestation took place.*"  This language is straightforward, comprehensive, and susceptible of only one reasonable interpretation:  that the definition of "sexual abuse occurrence" encompasses all of [the perpetrator's] acts of sexual misconduct while a[n] . . . employee regardless of the individual circumstances pertaining to each act comprising a "sexual abuse occurrence."

Id. at 1342-43 (emphasis in original).

In TIG Insurance Co. v. San Antonio YMCA, 172 S.W.3d 652 (Tex. App. 2005), a YMCA camp counselor allegedly sexually assaulted six children attending the camp. San Antonio YMCA, 172 S.W.3d at 655. TIG sought summary judgment on the grounds that the policy's sexual abuse coverage was limited to a single occurrence and that the abuse of all six children and the negligent hiring actions against the YMCA constituted a single occurrence under its policy.[1] Id. In a cross-motion, the YMCA argued that a new "occurrence" was triggered with each new victim. Id.

While the court determined that "each instance of sexual abuse of a different child would be a different 'occurrence,'" its inquiry did not end there. Id. at 661. The court pointed to the "all acts of sexual abuse occurrence" language and concluded, "giving effect to all provisions of the TIG policy," that "all of [the perpetrator's] alleged acts of sexual abuse, regardless of the number of

---

[1]The latter of these arguments was not before the court on appeal.

7

persons involved, or the period of time during which the acts of sexual molestation or abuse took place, constitute[d] a single Sexual Abuse Occurrence." Id. (internal quotation marks omitted). "To interpret each of the six alleged sexual assaults as giving rise to six separate Sexual Abuse Occurrences would[, in the court's opinion,] render the policy's distinctions between "occurrence" and "Sexual Abuse Occurrence" meaningless. Id.

Giving short shrift to the cases cited by TIG, the Defendant Parents focus instead on the term "related acts," which is not defined under the Policy, arguing that it is ambiguous. In support of their position, they point to cases in which courts have construed the term "related acts" as encompassing both a logical and a causal connection between separate acts of negligence (see Bay Cities Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co., 855 P.2d 1263 (Cal. 1993)) or as requiring only a causal connection (see Scott v. Am. Nat'l Fire Ins. Co., 216 F. Supp. 2d 689 (N.D. Ohio 2002); St. Paul Fire & Marine Ins. Co. v. Chong, 787 F. Supp. 183 (D. Kan.), aff'd 979 F.2d 858 (10th Cir. 1992); Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme, 735 P.2d 451 (Ariz. 1987)). However, these cases concerning the presence of "related" language in a policy generally do not contain the specific provisions held to be significant in creating a single occurrence in the cases cited by TIG.[2] See Smart Sch., 401 F. Supp. 2d at 1342-47, supra (the definition in the TIG policy of "sexual abuse occurrence" "contemplates that *either related or unrelated* incidents of sexual abuse by one perpetrator are to be treated as a single occurrence").

Defendant Spencer asserts in her response that the "all acts of sexual abuse occurrence" language and the deemer clause, "[i]f the 'sexual abuse occurrence' consists of a series of related acts of sexual abuse or molestation, the 'sexual abuse occurrence' shall be deemed to have taken place

---

[2]None of the cases cited by the Defendant Parents, all of which involved professional liability policies, addressed sexual abuse coverage or the specific language at issue in this lawsuit.

8

on the date of the first of such series of acts," are inconsistent, rendering coverage illusory. This argument was raised on behalf of an alleged abuse victim in <u>Smart School</u>, on which the court requested supplemental briefing by the parties. <u>Smart Sch.</u>, 401 F. Supp. 2d at 1347. The court concluded as follows:

> As TIG points out, the deemer clauses address when a claim "occurred" for the purpose of determining whether it falls within any particular coverage period, whereas the definition of "sexual abuse occurrence" addresses whether separately covered claims will be treated as one or more occurrences for the purpose of determining the extent of TIG's exposure under the applicable policy. This construction is consistent with numerous cases involving occurrence policies that make a distinction between the issue of whether and under what policy particular claims are covered versus the issue of whether, if there is coverage, the claims amount to more than one occurrence. Additionally, this construction avoids the necessity of disregarding the first paragraph of the definition that refers to ". . . multiple, . . . sporadic or related acts of sexual abuse or molestation," which the [c]ourt has found plainly covers both related and unrelated acts. Accordingly, the [c]ourt finds that the deemer clauses and the definition of "sexual abuse occurrence" address unrelated issues and therefore, all of [the perpetrator's] acts of sexual abuse or molestation of [the alleged victims], related or not, comprise one "sexual abuse occurrence" within the meaning of the TIG policy.

<u>Id.</u> (internal citations omitted).

Upon careful review of the case law cited by the parties and the arguments presented, the Court finds persuasive the decisions rendered in <u>Smart School</u> and <u>San Antonio YMCA</u>. Accordingly, the Court concludes that the abuse perpetrated by Ward upon students at Merryland constitute one occurrence for purposes of the Policy, which took place prior to the effective period of the Policy.[3] Likewise, the unambiguous language of the Policy, giving effect to all of its provisions, requires that the Defendant Parents' claims against Merryland for "negligent

---

[3] Like the court in <u>Smart School</u>, this Court finds Defendant Spencer's contention that TIG's choice of the singular "claimant" in its definition of "sexual abuse occurrence" is of no import. As the Florida district court articulated, "the court is unable to attribute any significance to the fact that TIG utilized the singular 'claimant' in the definition as the singular generally includes the plural in the interpretation of contracts unless, as is not the case in the instant matter, it is clear that the parties intended otherwise." <u>Smart Sch.</u>, 401 F. Supp. 2d at 1344.

9

employment" fall under the "all acts of sexual abuse occurrence" and, along with the claims relating to Ward's conduct, constitute one occurrence. (Policy, sec. V(G))

The Defendant Parents also aver that their claims in state court against Merryland for failure to monitor or supervise the children are "separate and distinct" acts of negligence that fall outside the Policy's definition of "negligent employment." The Policy defines "negligent employment" as "negligence, or alleged negligence, in the employment, investigation, supervision, training or retention in employment or volunteer status, of any person for whom the [insured] is or was ever legally responsible and whose conduct or alleged conduct is within the definition of "sexual abuse occurrence." (Policy, sec. V(F)). A review of the state court complaints filed by the parents of students at Merryland, copies of which are attached to TIG's complaint, reveals, however, that the claims, alleging negligence in hiring, failing to pursue background checks and references, failing to properly train staff and failing to properly supervise, clearly fall within the ambit of the "negligent employment" definition set forth in the Policy.

Defendant Spencer separately insists that claims relating to Ward's conduct and those averring that Merryland negligently hired and supervised Ward cannot be considered "one occurrence" because the Policy's "negligent employment" provision cannot apply to Merryland and its employees, arguing that Ward, the perpetrator, could not have "negligently employed" himself. Apparently, Spencer misunderstands the language of the relevant Policy provisions. The definition of "sexual abuse occurrence" clearly construes as one occurrence acts of sexual abuse by the perpetrator and the negligent employment *of* that perpetrator. (Policy, sec. V(G)) The "negligent employment" definition unambiguously refers to the employment *of* a person for whom the insured daycare operator is legally responsible by virtue of an employer/employee relationship. (Policy, sec. V(F)) Nowhere does the Policy require that the negligent employer be the perpetrator.

10

Spencer also characterizes injuries suffered by her child as resulting from physical assault, not sexual abuse, thereby attempting to separate them from the Policy's sexual abuse exclusions. This argument was successful in San Antonio YMCA, but cannot salvage TIG's duty to defend against Spencer's underlying claim here.  In Tennessee, in determining whether an insurer has a duty to defend, the "court must review the allegations of the complaint and determine whether any of them are covered under the policy." Drexel Chem. Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996), app. denied (Oct. 28, 1996).  Even facts potentially within the policy's coverage may trigger the duty to defend.  Id.; see also Policeman's Benefit Ass'n of Nashville v. Nautilus Ins. Co., No. M2001-00611-COA-R3-CV, 2002 WL 126311, at *6 (Tenn. Ct. App. Feb. 1, 2002).[4]  In San Antonio YMCA, the court found that TIG had a duty to defend based on the petitions' allegations that children were "physically, sexually, and mentally abused" by a YMCA employee and that they "suffered physical abuse."  It was the court's opinion that "these allegations suggest the possibility that the children's injuries may have resulted from physical abuse unassociated with sexual abuse or molestation." San Antonio YMCA, 172 S.W.3d at 663.

Spencer points to allegations in her complaint that Merryland breached a duty of care to her child by failing to protect him from "physical and sexual assault" and that, as a result of the daycare center's negligent acts, he was "proximately caused to suffer injuries including but not limited to physical and sexual assault and abuse on [the child] by the offending . . . Ward . . ." (Compl. for Decl. J. Ex. J (Compl. for Dams. ("Spencer Compl.") at ¶¶ 33(a) & 34)))  However, it is also alleged that "upon Plaintiff Spencer taking her son home [from Merryland] and questioning [him] about the events of the previous days, [her son] stated that no other teachers were around or watching him

---

[4]Although San Antonio YMCA was analyzed under Texas contract law, the applicable law in Tennessee is essentially the same.

11

when Defendant Ward took [the boy] into the computer room, drew the blinds closed, and sexually assaulted and molested him."  (Spencer Compl. at ¶ 18)  Further, Spencer averred that

> . . . Defendant Ward repeatedly and specifically sexually assaulted and physically molested [her son] in the following manner:
>
> a. By subjecting [him] to the repeated unwanted physical attentions and assaultive conduct of Defendant Ward;
>
> b. By Defendant Ward forcibly loosening [his] pants;
>
> c. By Defendant Ward placing his hands on [his] penis and genitals . . .;
>
> d. By Defendant Ward placing his hands on [the boy's] anus . . .;
>
> e. By Defendant continuing these actions for a period of time without the [child's] consent or permission . . .

(Spencer Compl. at ¶ 20)  A review of Spencer's complaint in its entirety reveals that all of the injuries alleged are associated with the sexual abuse by Ward and cannot be logically extricated therefrom.

Finally, the Court declines to rule in favor of the Defendant Parents based solely on public policy grounds as suggested by Defendant Spencer, being mindful of the admonition against rewriting contracts.  See Naifeh, 204 S.W.3d at 768 (cautioning courts not to rewrite a contract).  Nor can the Court refuse to grant properly based declaratory judgment in favor of TIG simply because doing so may result in the victims of the heinous acts engaged in by Ward being unable to collect damages for their injuries.

## CONCLUSION

For the reasons articulated herein, the motion of TIG is GRANTED and the Clerk is DIRECTED to enter declaratory judgment in its favor.  Furthermore, the Case Manager is to remove all deadlines and settings in this matter from the Court's calendar.  In addition, any and all pending

motions, including objections to the report and recommendation of the magistrate judge with respect to TIG's motion for default judgment, are DENIED as moot. The Court's order directing Defendant Merryland to pay sanctions for discovery abuses in the amount of $6,000 of course remains in effect.

IT IS SO ORDERED this 31st day of January, 2007.

                                                     s/ J. DANIEL BREEN
                                                     UNITED STATES DISTRICT JUDGE